Newman, J.
The relator is asking this court to issue a writ of mandamus compelling the defendant to reissue the building permit to erect its building and factory, which it claims was revoked without authority and in violation of law. The defendant in justification of the revocation and of his refusal to reissue the permit relies upon the provisions of the ordinance of October 2, 1917. It is admitted that this ordinance was duly enacted. The motive, therefore, which induced council to enact it is not a subject of inquiry here. This ordinance prohibits the erection or use of a building for the storage, cleaning or renovation of uncured animal hair, or any of the by-products thereof, or for the manufacture of any combination of the same requiring the use or handling of animal substances emitting noxious odors, gases or volatile substances, upon any land or property abutting any public street, alley, or natural boundary, such as streams of water, well-defined ravines or railway *257 rights of way in the city of Cincinnati, which form any part of the boundary of a residential block or square as defined by Section 452 of the code of ordinances of the city of Cincinnati. The building proposed to be erected by the relator is upon land abutting Chase and Dane avenues, and these avenues form a part of the boundary of a residential block as defined by Section 452 of the code of ordinances of the city of Cincinnati.
The validity of the ordinance of October 2, 1917, is challenged by the relator. The presumption, of course, is in favor of its validity, and it is therefore incumbent upon the relator to show that the action of the council of the city of Cincinnati in the enactment of the ordinance in the exercise of the police power is clearly unreasonable and arbitrary. It is conceded by counsel that the guaranties contained in our Bill of Rights and in the Fourteenth Amendment to the Constitution of the United States were not designed to interfere with the police power of the state in the protection of the lives, liberty and property of its citizens and in the promotion of their health, morals, education and good order. But it is urged that this power has its limitations and must stop when it encounters the prohibitions of the constitution, and the claim is made that this is a case where a municipality in the exercise of the police power is attempting to override the constitutional guaranties in order to prevent the completion of a building in process of erection for a business not a nuisance per se, in order to satisfy the demands of a few people,
*258 In the well-known case of Mugler v. Kansas, 123 U. S., 623, which involved the constitutionality of the law of Kansas prohibiting the manufacture or sale within the limits of that state of intoxicating liquors for general use there as a beverage, it is said that under our system there is lodged with and there belongs to the legislative branch of the government the power and authority to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health or the public safety. In the General Code of this state there is an enumeration of powers conferred upon municipal corporations, and the councils of these corporations are authorized to. provide by ordinance or resolution for the enforcement or exercise of them. Among the powers conferred — under the head of health and sanitation — is the following: “Section 3650. To cause any nuisance to be abated, to prosecute in any court of competent jurisdiction, any person or persons who shall create, continue, contribute to or suffer such nuisance to exist; to regulate and prevent the emission of dense smoke, to prohibit the careless or negligent emission of dense smoke from locomotive engines, to declare each of the foregoing acts a nuisance, and to prescribe and enforce regulations for the prevention thereof; to prevent injury and annoyance from the same, to regulate and prohibit the use of steam whistles, and to provide for the regulation of the installation and inspection of steam boilers and steam boiler plants,”
*259 A municipality under the provisions of this section is authorized to regulate and suppress all places that in its judgment are likely to be injurious to the health of its inhabitants or to disturb the people living in the immediate neighborhood by offensive odors. In Fisher v. St. Louis, 194 U. S., 361, 370, Mr. Justice Brown uses this language: “The power of the legislature to authorize its municipalities to regulate and suppress all such places or occupations as in its judgment are likely to be injurious to the health of its inhabitants or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question.”
In the instant case, the determination of the question whether or not the ordinance was reasonably necessary for the protection of the health and comfort of those within the locality in question was committed in the first instance to the judgment of the municipal authority. If, in the exercise of the discretion conferred upon it, the municipality acted reasonably, and not arbitrarily, its action is not subject to objection and will not be disturbed.
The business which is proposed to be carried on by the relator is that of buying, selling, processing and manufacturing the hair of animals and packjing-house by-products. This business is prohibited at the place where the relator proposes to carry it on. After the ordinance was introduced in council it was referred to the committee on health, and a public hearing was had by this committee, and it visited places of business in the city of Cincinnati where the buying, selling, processing and manufac *260 luring of the hair of animals and packing-house by-products was prosecuted. As a result of this public hearing and the investigation the committee reported that in such a business noxious odors, gases and volatile substances were emitted, and upon its recommendation the ordinance was passed, council thereby declaring in effect that the business in which the relator was about to engage was offensive and unwholesome. We do not think it can be said that council abused the discretion conferred upon it and that it acted arbitrarily. In the case of Cusack Co. v. Chicago, 242 U. S., 526, 531, Mr. Justice Clarke uses the following language in reference to the power of local legislative authority in the exercise of the police power, which, we think, is pertinent here: “It [the court] will interfere with the action of such authority only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare.” It is suggested by counsel that the evidence of the relator shows that by the modern method to be used by it in the curing of animal hair no offensive odors will escape to the surrounding atmosphere. We do not think that this is material here. It appears from the evidence and from the investigation of the committee in council that the business in which the relator proposes to engage produces disagreeable and unwholesome odors, which interfere with the comfort, and are more or less injurious to the health, of the community where the business is located. We agree with counsel for defendant that the only issue, aside from- the power to enact the ordinance, *261 is whether the class of business sought to be restrained is such as may in good faith be deemed a nuisance within the limit of restraint. We are therefore constrained to hold that it has not been made to appear that the action of council in the enactment of the ordinance had no real or substantial relation to the public health or comfort and that it acted unreasonably or arbitrarily.
The ordinance in question was enacted after the permit was issued to the relator'. The further claim is made that the relator having expended considerable money in the purchase of land and material, and having entered into certain contracts for the erection of the building, and the building being in course of construction, acquired certain vested rights which could not be affected by the ordinance — that the ordinance could not be retroactive. It is not necessary to devote much time to this proposition, for it seems to be well settled that a permit such as was issued in this case has none of the elements of a contract, and may be changed or entirely revoked, even though based on a valuable consideration, if it becomes necessary to do so in the exercise of a legislative power on subjects affecting the public health or public morals. Cooley on Constitutional Limitations, 283; Beer Co. v. Massachusetts, 97 U. S., 25; Fertilizing Co. v. Hyde Park, Id., 659; Butchers’ Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co., 111 U. S., 746; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S., 650; Moore v. Indianapolis, 120 Ind., 483, and Dobbins v. Los Angeles, 139 *262 Cal., 179. In the Dobbins case, which is similar to the one under consideration here, 'it was held: “The fact that the plaintiff had lawfully commenced it's work by purchasing land for a site within the limits allowed by the original ordinance, and had expended money in laying a foundation, and had entered into contracts for the erection of its works, and had secured a building permit from the fire commissioners in pursüance of fire and building ordinances, cannot estop the city from the further exercise of its police power to change the limits so as to make the erection and maintenance of such gas-works unlawful where begun and existing within the changed limits.”
This is a proceeding in mandamus and it has been repeatedly held that the right of the relator to a writ must be clear and there must be shown a plain dereliction of duty on the part of the officer. We think the relator has failed to establish its right to the writ and the same must be refused.

Writ refused.

Jones, Matthias, Johnson and Donahue, JJ., concur.