**MINNEAPOLIS AUTO PARTS COMPANY, INC., Joseph E. Garber and Nancy Garber, Plaintiffs,**

v.

**The CITY OF MINNEAPOLIS, Albert J. Hofstede, Judy Corrao, Patrick M. Daugherty, Louis DeMars, Walter Dziedzic, Zollie Green, Sally Howard, Charlee Hoyt, Mark Kaplan, Alice W. Rainville, Walter H. Rochstein, Dennis W. Schulstad, Jacqueline Slater, Parker Trostel, Defendants.**

No. 3–82 Civ. 1320.

United States District Court,
D. Minnesota.

Aug. 23, 1983.

---

**75.** *See Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1941.

Rosen & Ballenthin by William S. Rosen, St. Paul, Minn., for plaintiffs.

Robert J. Alfton, City Atty., City of Minneapolis, by Les R. Karjala, Asst. City Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon defendants' motion for summary judgment. This memorandum order sets forth the material facts about which the court finds there is no genuine issue, and the conclusions of law regarding defendants' motion.

### FACTS

Plaintiff Minneapolis Auto Parts Company, Inc. (hereinafter "MAPCO") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Plaintiffs Joseph and Nancy Garber, husband and wife, are citizens of the United States and residents of the State of Minnesota. They are controlling stockholders of MAPCO and employed by MAPCO.

Defendant City of Minneapolis is an incorporated city in Hennepin County, Minnesota. Defendant Hofstede is a resident of the State of Minnesota and at all relevant times was Mayor of the City of Minneapolis. Defendants Corrao, Daugherty, DeMars, Dziedzic, Green, Howard, Hoyt, Kaplan, Rainville, Rockenstein, Schulstad, Slater and Trostel are residents of the State of Minnesota and at all relevant times were Aldermen of the City of Minneapolis.

MAPCO is a motor vehicle parts business. Specifically, the business involves the purchase of used motor vehicles, the dismantling of the vehicles, the open storage and display of motor vehicle parts and accessories, and the sale of those parts to the public. Since 1928, MAPCO or its predecessor proprietors consisting of members of the Garber family, conducted business in the 1600 block of Washington Avenue North in Minneapolis. The land at that location was zoned M–3, which explicitly permits the operation of a junk yard. In 1979, the property at 1600 Washington Avenue North was acquired by the State of Minnesota under the power of eminent domain for the pur-

pose of constructing a highway. As a result of this acquisition, plaintiffs were forced to move MAPCO to a different location.

Joseph Garber and members of his family own and control a corporation which is the fee owner of property located at 4640 Lyndale Avenue North in Minneapolis. From 1979 to present, the Lyndale property has been zoned M-2 Limited Manufacturing District.

Plaintiffs intended to move the MAPCO business to the Lyndale property. In order to do so, they were required to first secure the proper permits and licenses. Title 13 Minneapolis Code of Ordinances § 265.60 provides that:

No building, structure, vacant lot or premises within the city shall be kept, used or maintained for the purpose of therein or thereon keeping, storing, handling, buying, selling or wrecking used, secondhand or junked motor vehicles or motor vehicle accessories, unless permission to do so has been first obtained from the city council.

Permits under § 265.60 are referred to as special council permits. In addition, Title 13 Minneapolis Code of Ordinances § 321.40 provides that no person shall engage "in the business of dealer in secondhand goods or junk without a secondhand goods dealer's license under this article."

On April 19, 1979, plaintiffs filed with the City of Minneapolis an application for a special council permit and a transfer of their secondhand goods dealer's license to the Lyndale location. A hearing was held before the City Council at which plaintiffs and the City of Minneapolis presented evidence. By resolution adopted by defendants Corrao, Daugherty, DeMars, Dziedzic, Green, Howard, Hoyt, Kaplan, Rainville, Rockenstein, Schulstad, Slater and Trostel on May 25, 1979, the Minneapolis City Council denied both of plaintiffs' applications. This decision was approved by defendant Hofstede on May 30, 1979.

The City Council based the denial on its written finding that plaintiffs' business would violate the local zoning ordinance because it would be classified as a junk yard. In reaching this decision, the City Council members relied in part on the recommendation of William Nordrum, Jr., Zoning Supervisor of the City of Minneapolis, who told the Council that plaintiffs' proposed use would have been in violation of the Minneapolis Code of Ordinances as he interpreted them. The Council members also relied upon testimony and evidence offered at public hearings, reports of staff and opinions of the City Attorney in arriving at their decision.

On June 27, plaintiff MAPCO commenced an action for injunctive and declaratory relief against the City of Minneapolis in Hennepin County District Court seeking, *inter alia*, an order directing the City Council to adopt a resolution granting MAPCO's applications and enjoining the City from interfering with MAPCO's use of the Lyndale property for its business. MAPCO alleged in its Complaint that the denial of its applications for the permits and licenses necessary to conduct its business at the Lyndale property was contrary to the ordinances of the City of Minneapolis, was unrelated to the public health, safety and welfare, and was unreasonable, arbitrary, capricious, unlawful and void. Furthermore, MAPCO alleged that the denial of its applications deprived it of the equal protection of the laws and constituted a taking in contravention of the United States Constitution and the Minnesota Constitution.

Plaintiffs had made application to the City Council for a used motor vehicle parts dealer's license pursuant to Title 13 Minneapolis Code of Ordinances § 348.20 in April, 1979. Section 348.20 was not effective until July 1, 1979, at which time MAPCO's civil action in Hennepin County District Court was pending. Plaintiffs also had made application during the summer of 1979 to the City Council for a permit to construct a building on the Lyndale property. Defendants deferred action on plaintiffs' applications for a used motor vehicle parts dealer's license and a building permit until resolution of the Hennepin County action.

On December 14, the Hennepin County District Court issued its decision holding that the denial of MAPCO's applications for licenses and permits[1] was "unreasonable, arbitrary and capricious, and therefore unconstitutional and void" and "discriminatory and arbitrary and in violation of the Equal Protection Clause of the Minnesota Constitution and the Fourteenth Amendment of the United States Constitution." Based thereon, the District Court ordered that the City issue to MAPCO the necessary permits and licenses to conduct its business at the Lyndale location and also enjoined the City, its officers, agents, elected representatives and employees from "interfering with the plaintiff's continuous peaceful use and enjoyment of the property" on Lyndale Avenue. The City Council granted the permits and licenses in accordance with the District Court's order. The City's appeal was dismissed by the Minnesota Supreme Court on November 10, 1980.

The City of Minneapolis had commenced a criminal action against plaintiffs Joseph and Nancy Garber on September 13, 1979 for conducting their used motor vehicle parts business at the Lyndale location without the proper licenses and permits. The Municipal Court continued the criminal case until a decision was reached in the the then pending Hennepin County action. The criminal charges were dismissed after the resolution of the civil action.

Plaintiffs filed this lawsuit on October 7, 1982. The Complaint alleges that the prosecution of the criminal action against plaintiffs was "in violation of the equal protection and due process clauses of the United States Constitution." Furthermore, it alleges that the denial of plaintiffs' applications for the permits and licenses necessary to conduct their business at the Lyndale location deprived plaintiffs "of their rights and privilege secured by the Constitution and laws of the United States and the State of Minnesota."

1. The Court ruled on each of the applications: the secondhand goods dealer's license, the special counsel permit under § 265.60, the used motor vehicle parts dealer's license and the building permit.

## DISCUSSION

Although plaintiffs' Complaint does not specifically refer to it, this action is brought pursuant to 42 U.S.C. § 1983. In order to state a cause of action under § 1983, plaintiffs must allege that they were deprived of a federal right and that the deprivation was caused by a person or persons acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). Plaintiffs have alleged that defendants, under color of state law, violated their rights to due process and to equal protection of the laws by denying their applications for the permits and licenses necessary to conduct their business at the Lyndale location and by criminally prosecuting plaintiffs for operating their business without the proper permits and licenses. Defendants have moved for summary judgment as to all claims. For the reasons set forth more fully below, the court will grant defendants' motion.

### I.

There are both procedural and substantive aspects to due process. Plaintiffs' counsel stated at oral argument, however, that plaintiffs do not claim any violation of procedural due process in this case. Thus, plaintiffs' due process claim embraces only alleged violations of substantive due process.

### A.

The general rule is that state action deprives an individual of substantive due process if the state acts in an arbitrary or capricious manner regarding that individual. *See Evans v. Page,* 516 F.2d 18, 21 (8th Cir.1975). However, the Court of Appeals for the Eighth Circuit has rejected the view that "substantive due process is a specific constitutional right in itself, cognizable under 42 U.S.C. § 1983 and violated whenever a state acts to the detriment of an individual in a manner that is arbitrary or capri-

cious." *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196, 1201 (8th Cir. 1974) (footnotes omitted). Rather, the Court in *Buhr* held that the right to federal judicial review of allegedly arbitrary state action pursuant to 42 U.S.C. § 1983 is conditioned "upon a showing that a specific constitutional right has been infringed, such as deprivation of freedom of speech, racial discrimination or denial of procedural due process rights where liberty or property interests are at stake." *Id.* (footnotes omitted). *See Galaway v. Lawson,* 438 F.Supp. 968, 972 (D.Minn.1976).

The United States Supreme Court has also held that § 1983 does not extend the right to relitigate in federal court the issue of the construction and application of local laws to specific fact situations. Section 1983 "was not intended to be a vehicle for federal-court correction of errors in the exercise of ... discretion which do not rise to the level of specific constitutional guarantees." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). *See Board of Education of Rogers, Ark. v. McCluskey,* 458 U.S. 966, 102 S.Ct. 3469, 3472, 73 L.Ed.2d 1273 (1982).

■ Plaintiffs have not alleged that the City Council's action infringed any specific constitutional right. Neither substantive due process nor equal protection involve any specific constitutional rights in this case since plaintiffs are not members of a suspect class[2] nor engaged in an activity which implicates a fundamental right.[3] Therefore, plaintiffs were not deprived of any substantive due process rights cognizable under § 1983.

Regardless of how disappointed plaintiffs may have been at initially having their applications denied, they are not constitutionally entitled to relitigate in federal court the issue of the propriety of the City Council's decision. "Where a state has provided reasonable remedies to rectify a legal error

by a local administrative body ..., current authority indicates that due process has been provided, and that section 1983 is not a means for litigating the correctness of the state or local decision in a federal forum." *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.1982). *See Ellis v. Hamilton,* 669 F.2d 510, 514 (7th Cir.1982); *Atencio v. Board of Education of Penasco,* 658 F.2d 774, 780 (10th Cir.1981). In this case, the state provided review of the City Council's decision in the form of an appeal to the District Court and, in fact, plaintiffs took advantage of the state procedures and were successful. Thus, even assuming the City Council was incorrect in its denial of plaintiffs' applications, plaintiffs have not been deprived of any substantive due process right cognizable in an action based on § 1983.

■ In summary, this court is of a view that the federal inquiry into the propriety of a decision of a city council to grant or deny a license or permit is limited to reviewing the procedural adequacy of the local laws and procedures under § 1983. If the state and local procedures meet procedural due process, the federal inquiry ends. The Due Process Clause of the United States Constitution does not guarantee an individual a correct decision in every instance; it guarantees only that the decision whether correct or incorrect will not be based upon allegations which the individual has not had an opportunity to refute. *See Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976); *Vruno v. Schwarzwalder,* 600 F.2d 124, 132 (8th Cir. 1979); *Johnson v. City Council of Green Forest, Ark.,* 545 F.Supp. 43, 52 (W.D.Ark. 1982).

### B.

■ Even if § 1983 did provide a remedy for the alleged improper or incorrect decisions of a City Council in cases such as this,

---

**2.** The United States Supreme Court has recognized race, national origin and alienage as suspect classifications. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 n. 4, 96 S.Ct. 2562, 2566 n. 4, 49 L.Ed.2d 520 (1976).

**3.** Interstate travel, privacy, voting and all First Amendment rights are recognized as fundamental rights by the United States Supreme Court. *See id.* at 312 n. 3, 96 S.Ct. at 2566 n. 3.

it would still be necessary to prove a violation of substantive due process. The Fourteenth Amendment prohibits any state deprivation of liberty or property without due process of law. Under the traditional analysis, plaintiffs must demonstrate that they were deprived of a liberty or property interest by governmental actions in order to be entitled to due process. *See Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). This is true whether plaintiffs allege a deprivation of procedural or substantive due process. *Bishop v. Tice,* 622 F.2d 349, 353 (8th Cir. 1980).

■ In determining whether a property interest is at stake, the court must look to state law. *Id.* 408 U.S. at 577, 92 S.Ct. at 2709. The Minnesota Supreme Court has held that there is no property interest in an unissued liquor license. *Country Liquors, Inc. v. City Council of City of Minneapolis,* 264 N.W.2d 821, 826 (Minn.1978). The plaintiffs in *Country Liquors* had sought to have an off-sale liquor license transferred in their name to a new business location. Despite the fact that the new location would comply with local ordinances regulating the sale of liquor, the Minneapolis City Council voted to deny the application. The plaintiffs filed suit in state court and were unsuccessful in having the Council's decision overturned. On appeal, the plaintiffs argued that their due process rights had been violated. The Minnesota Supreme Court affirmed on the grounds that the plaintiffs had no property interest in the dormant license which they sought to have transferred. *Id.* at 826.

■ This court is of a view that plaintiffs in this case had no property interest in the various unissued licenses and permits. To have a property interest in something, an individual must have a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The City Council is vested with the discretion to grant or deny such a license or permit.

Thus, prior to its being issued, the applicant has no legitimate expectation of entitlement to a license or permit. *See Golden State Transit v. City of Los Angeles,* 686 F.2d 758, 760 (9th Cir.1980) (discretion to grant taxi franchise).

■ A liberty interest is not invoked in cases such as this unless the refusal to allow a license or permit casts a shadow on the applicant's reputation or personal character. *Board of Regents v. Roth,* 408 U.S. at 572, 92 S.Ct. at 2706–07; *Country Liquor,* 264 N.W.2d at 826. The denial of plaintiffs' applications in this case was grounded on factual findings regarding the nature of plaintiffs' business and on interpretations of the Minneapolis ordinances by the City Council rather than on plaintiffs' personal qualifications or lack thereof. Thus, plaintiffs were not deprived of any liberty interest.

■ In summary, plaintiffs were not deprived of any property or liberty interest within the meaning of the due process clause by the City Council's denial of their applications for permits and licenses. Therefore, plaintiffs were not deprived of any right to substantive due process.[4]

## C.

■ Finally, plaintiffs allege that the City's criminal prosecution of them for operating their business at the Lyndale location without the proper permits and licenses denied them due process. The court is of a view that plaintiffs were not denied any cognizable right to due process because of the criminal prosecutions. They did not have the necessary licenses and permits to operate their business and thus were in violation of City ordinances. Whether the denial of their applications violated plaintiffs' right to due process is a distinct issue which the court addressed above.

## II.

Plaintiffs claim that defendants violated their right to equal protection by denying

**4.** For the same reasons, plaintiffs had no interest which was protected by procedural due process and so they were not deprived of any right to procedural due process. As stated earlier, plaintiffs claim no deprivation of procedural due process in this case.

their applications for the permits and licenses necessary to operate MAPCO at the Lyndale location. Specifically, plaintiffs allege that the City recommended the issuance of the necessary licenses and permits to the Allied Salvage Company to conduct a used motor vehicle parts business on property zoned M–2, which is only one-half block north of plaintiffs' Lyndale property. Indeed, the Hennepin County District Court found that the City of Minneapolis had violated plaintiffs' right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution. In addition, plaintiffs have claimed in this action that defendants violated their right to equal protection by initiating criminal proceedings against them for operating their business without the necessary permits and licenses.

■ Plaintiffs do not appear to be challenging the Minneapolis ordinances on their face. Rather, they challenge what they allege to be the discriminatory application of those ordinances to deny their applications. A law valid on its face but so administered as to unjustly discriminate between persons in similar circumstances may deny equal protection. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

■ The actions of defendants in this case fall in the area of local regulation of business or industry. As stated previously, plaintiffs are not members of a suspect class nor is a fundamental right implicated in this case. Thus, defendants have not violated the Equal Protection Clause unless there is no rational basis for their alleged discriminatory treatment of plaintiffs. *See Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970). Thus, if a cause of action for violation of the Equal Protection Clause were cognizable under § 1983 in this case, the parties would be allowed to litigate the reasonableness of the City Council's decision.

When no specific constitutional guarantees have been infringed by the administrative action, this court is of the view that § 1983 does not provide a remedy in federal court for alleged violations of equal protection. Whenever a City Council uses its discretion to deny a license or permit in a given situation, it is possible to find another person who was granted such a license or permit under seemingly similar circumstances. To allow an action based on equal protection when plaintiffs are not members of a suspect class or when no fundamental rights are implicated, would be to provide plaintiffs with a federal remedy whenever an administrative body acts arbitrarily or capriciously. The Court of Appeals for the Eighth Circuit has held that such a remedy is not cognizable under § 1983 when plaintiffs allege violations of substantive due process. *See Buhr v. Buffalo Public School District No. 38,* 509 F.2d at 1201. This court sees no reason to treat plaintiffs' claim under the Equal Protection Clause any differently than it has plaintiffs' claim under the Due Process Clause since in this case the issue to be litigated would be the same in either instance—the reasonableness of the City Council's action.

Federal Courts should not sit as super-review committees whenever a plaintiff employs the "I should have gotten a license if he did" argument in support of an alleged equal protection violation. *See Clark v. Whiting,* 607 F.2d 634, 638–40 (4th Cir. 1979). Therefore, for the same reasons as set forth in Part I.A. of this opinion, the court holds that plaintiffs were not deprived of any right to equal protection cognizable under § 1983 when the City Council denied their applications for permits and licenses.

■ Plaintiffs also allege that they were deprived of equal protection of the laws by the City's criminal prosecution of them for operating their business without the proper permits and licenses. Plaintiffs do not allege that any other similar businesses were permitted to operate without the necessary licenses and permits. Thus, plaintiffs have not stated a claim for violation of the Equal Protection Clause. Whether the denial of the applications violated plaintiffs' right to equal protection of the laws is a distinct issue which the court addressed above.

Upon the foregoing,

IT IS ORDERED That defendants' motion for summary judgment is granted, and plaintiffs' Complaint is dismissed with prejudice to the extent it alleges a cause of action under 42 U.S.C. § 1983 based on violations of due process.

IT IS FURTHER ORDERED That defendants' motion for summary judgment is granted, and plaintiffs' Complaint is dismissed with prejudice to the extent it alleges a cause of action under 42 U.S.C. § 1983 based on violations of equal protection.

IT IS FINALLY ORDERED That the Clerk enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That plaintiffs have and recover nothing of the defendants, and the action is dismissed with prejudice.